## BUFFINGTON'S IRON BLDG. CO. v. EUSTIS.

(Circuit Court of Appeals, Eighth Circuit. January 7, 1895.)

No. 504.

1. PATENTS—IRON-BUILDING CONSTRUCTION—CLAIMS.
    The thirteenth claim of the Buffington patent, No. 383,170, for "improvements in iron-building construction," being "the combination, with the posts and girts, of the angle plates connecting them, and forming supports for the veneer shelves," does not include a claim for the idea of supporting horizontal sections of masonry veneer on the iron framework of a building, or the combination of such veneer and the shelves supporting it with the iron frame, merely because shelves and veneer supported thereon in horizontal sections are described in the specifications of the patent.

2. SAME.
    The thirteenth claim of the patent, for "the combination, with the posts and girts, of the angle plates," etc., is not for any posts, in combination with the angle plates, but for the laminated posts described in the specifi-

cations, and claimed 12 times in the patent, either alone or in combination, and is not infringed where the posts used in a combination are not laminated.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Suit by the Buffington's Iron-Building Company against William H. Eustis. The bill was dismissed, and complainant appeals.

Lysander Hill (P. H. Gunckel filed a brief), for appellant.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree dismissing a bill brought to recover damages for the infringement of letters patent No. 383,170, issued May 22, 1888, to Leroy S. Buffington, for "improvements in iron building construction." The bill was dismissed on the ground that the appellee was not an infringer because he used no such arrangement of tie beams and girts and no such framing posts as are described and claimed in the patent. The chief contention here is that, if the appellee has not made use of the precise combination of laminated posts, girts, tie beams, and other fastenings described and claimed in the patent, the thirteenth claim thereof is broad enough to cover "any building composed of any kind of iron and metal or masonry work, having exterior walls of masonry or of suitable material, supported at proper intervals upon the framework." The record discloses the fact that there are two methods of constructing fireproof buildings. By the earlier method, the masonry walls support the metal girts, beams, and framework within. By a later method a substantial metal frame supports a veneer of masonry or other like material either upon parts of the frame itself, or upon shelves attached to or supported by it, and placed at each story or at other proper intervals, so that a horizontal section of the veneer may rest upon each shelf. Counsel for appellant insist that Buffington was the inventor of this later method of construction; that it is a manifest improvement upon the earlier method; and that he has claimed and secured the exclusive right to this improvement by his patent. They base this contention upon a single claim of the patent, which reads: "(13) The combination, with the posts and girts, of the angle plates connecting them, and forming supports for the veneer shelves;" and they maintain that, because shelves and veneer supported thereon in horizontal sections are described in the specifications of this patent, they should be read into this claim, and all buildings in which a veneer of masonry or other like material is supported by a frame of iron or steel should be held to be infringements of this patent. Is this the proper construction of this thirteenth claim?

In his specifications the patentee makes the following statement:

"My invention relates to fireproof buildings composed chiefly of iron; and the objects of the invention are mainly—First, the construction of an iron building in a manner that will practically obviate undue expansion and contraction during the extremes of heat and cold; second, a novel construction and arrangement of the main structure, and of the stairs and elevator shafts, whereby there is attained the necessary strength and stability, together with

compactness and the utilization of the space to the best advantage; and, third, an improved plan of floors, and means of bracing the iron beams in fireproof floors in such structure. * * * In the several views, A, A, designate laminated framing posts composed of plates, a, of iron or steel, laid together so as to break joints, and secured together by bolts or rivets, a. The plates should be relatively long, and those for the lower portion of the posts of unequal length, so that as other plates are added they may overlap and break joint throughout the entire length of the structure. The posts are made to suitably diminish in thickness for the successive stories by omission of an outer plate, a, at proper intervals, so that the general shape of the posts will be tapering from foundation to roof, and they can of course be constructed in this manner of any desired height, regard being had to the size and proper proportioning of the plates in the structure, and thus form, when braced, a continuous skeleton or frame extending from bottom to top of the structure. * * * Around the entire exterior of the framing, except the window spaces, is a sheathing, P, of wire lath or other suitable material for the inner support of a thick covering, Q, of mineral wool or other nonconducting substance, and this is in turn covered on its exterior surface by a second sheathing, P', of wire lath or other suitable material, and R is an exterior veneering of stone or other suitable material, supported at each story (and at closer intervals when necessary) by shelves, s, that rest upon and are secured to projecting portions, c', of the angle plates, c, and the veneering is secured at proper points by anchor rods, t, that are made fast to the braces, B, B'."

The patent has 14 claims. Those material to the questions under consideration here are:

"(1) A building having a continuous skeleton of metal, a covering of veneer, and a nonconducting packing between the skeleton and veneer for the purpose set forth. (2) In a building frame, a continuous diminishing laminated post formed of layers of metal plates secured together and arranged to break joints, and decreasing in number towards the top." "(5) In iron-building construction, the combination, with a framing composed of laminated posts suitably connected by braces and girts, of an exterior covering of nonconducting material, and a stone or other veneering exterior thereto, and supported on shelves secured to the framing, substantially as set forth." "(7) In a building frame, a series of continuous framing posts composed of metal plates secured with their flat sides together and breaking joints, in combination with girts and tie beams secured thereto at each floor, substantially as set forth." "(9) The combination, with the framing posts and braces, of the wire lath or equivalent coverings, the nonconducting packing, and the veneering supported by the shelves, and anchor rods, substantially as and for the purposes set forth." "(13) The combination, with the posts and girts, of the angle plates connecting them, and forming supports for the veneer shelves."

In support of their contention for this broad construction of the thirteenth claim of this patent, counsel for appellant cite Johnson v. Root, 2 Fish. Pat. Cas. 291, 298, Fed. Cas. No. 7,409; Weighing Mach. Co. v. Blauvelt, 50 Fed. 213; Parham v. Sewing Mach. Co., 4 Fish. Pat. Cas. 468, 486, Fed. Cas. No. 10,713; Forbush v. Cook, 2 Fish. Pat. Cas. 668, Fed. Cas. No. 4,931; Lee v. Pillsbury, 49 Fed. 747, 749; Alaska Refrigerator Co. v. Wisconsin Refrigerator Co., 47 Fed. 324, 327, and other authorities, to the effect that a claim for an improvement in an operative machine which describes the indispensable elements of the improvement and their relation to the older parts of the machine is sufficient, although it does not specifically claim old and well-known parts that are clearly requisite to the operation of the improved machine. Their argument is fairly illustrated by their treatment of Johnson v. Root, supra. They say that in that case, in an action upon a claim for the "feeding of the

materials to be sewn by means of a vibrating piercing instrument, whether said instrument be the needle itself or an independent instrument in the immediate vicinity thereof as herein described," it was held that so far as a table and cloth holder, both of which were necessary to the operation of the instrument, modified or changed the action of the feeding instrument, they might be deemed to be covered by the claim; and they argue that if the patentee in this case had made his claim for "supporting the horizontal sections of masonry walls by means of steel shelves, substantially as described," such a claim would have secured to the inventor not only the shelves, but the entire steel frames supporting them, so far as any function the frames performed modified the action of the shelves. The conclusive answer to this argument is that supporting horizontal sections of masonry by means of steel shelves is just what the patentee in this case has not claimed, but by his failure to claim has abandoned to the public. A claim of a table and a cloth holder would not have covered the vibrating piercing instrument which fed the materials, or its function of feeding them, in Johnson v. Root, nor will a claim for a projection on an angle iron or a post to support a shelf cover the shelf, the articles that may be placed upon it, or its function of supporting them.

The statute requires the inventor to particularly point out and distinctly claim the improvement or combination which he claims as his discovery. Rev. St. § 4888. When, under this statute, the inventor has made his claim, he has thereby disclaimed and dedicated to the public all other combinations and improvements apparent from his specifications and claims that are not mere evasions of the device, combination, or improvement he claims as his own. The purpose of a claim in a patent is to notify the public of the extent of the monopoly secured to the inventor, and, while it is notice of his exclusive privileges, it is no less an estoppel of the patentee to claim under that patent any combination or improvement he has not therein pointed out and distinctly claimed as his discovery or invention. The presumption is, and it is generally the fact, that any such unclaimed combination or improvement was not the invention or discovery of the patentee; that it was old and well known; and that for that reason he did not intend to claim it. But whether he did intend to claim it or not is immaterial, in an action for the infringement of a patent, where no claim for mistake or inadvertence in preparing the specifications or claims can be heard. The patent itself is a solemn declaration of the inventor that every improvement, device, and combination not claimed by him therein is not his invention or discovery, but is the property of the public. It is full and legal notice to every one; notice on which every one has the right to rely that he may freely use such improvements and combinations without claim or molestation from the patentee. The public generally does use them, and it would be rank injustice to permit a patentee, after a combination or device that he did not claim has gone into general use, and years after his patent was granted, to read that combination or device into one of the claims of his patent, and to recover for its infringement of every one who has used it on the faith of his

solemn declaration that he did not claim it. Stirrat v. Manufacturing Co., 10 C. C. A. 216, 61 Fed. 980; Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274, 278; Miller v. Brass Co., 104 U. S. 350, 352; Mahn v. Harwood, 112 U. S. 354, 357, 361, 5 Sup. Ct. 174, and 6 Sup. Ct. 451; Wollensak v. Reiher, 115 U. S. 96, 5 Sup. Ct. 1137; Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. 38.

The patent of Mr. Buffington, when it is examined in the light of these principles and authorities, itself furnishes conclusive evidence, not only that he did not claim, but that he never intended to claim, the idea of supporting horizontal sections of masonry veneer on the iron framework of a building as his discovery, or the combination of such veneer and the shelves supporting it with the iron frame as his invention. The purpose of supporting sections of veneer upon an iron frame is to obviate the necessity of constructing masonry walls, for the lower stories of high buildings, thick and heavy enough to sustain the weight of the upper stories. Under this new method of construction, the walls of the lower stories are not required to be thicker than those above them. But this was not the object of Buffington's invention. So far as his invention has to do with the outer walls of the building, its sole object was to obviate the undue expansion and contraction of the metal frame during the extremes of heat and cold. It is difficult to see how thinning the masonry walls could diminish the expansion and contraction within. This method of supporting the masonry in sections, when considered by itself, would seem to detract from, rather than to promote, the object of this invention, for the thicker the walls the less the variation of temperature within. Nor does the inventor point out in his specifications or claim that diminishing the thickness of the masonry walls would have any other effect. On the other hand, he relies chiefly, if not entirely, upon two improvements, which he describes, to accomplish his object, viz.: The continuous tapering laminated iron or steel posts, and the thick covering of mineral wool or other nonconducting substance around the exterior of the framing, except the window spaces. Indeed, the only references to the veneer, or to the shelves supporting it, found in the specifications, is a reference to a drawing which "is a perspective view from the exterior of a portion of a post, the girts, beams, angle plates, and shelf for the veneer," and the following description, which closes the specification, and follows the reference to the nonconducting material packed around the exterior of the building: "And R is an exterior veneering of stone or other suitable material, supported at each story (and at closer intervals when necessary) by shelves, s, that rest upon and are secured to projecting portions, c', of the angle plates, c, and the veneering is secured at proper points by anchor rods, t, that are made fast to the braces, B, B'." In this state of the specifications, it is incredible that this inventor postponed his claim to so radical an improvement as that of supporting the masonry walls of a building on the iron or steel frame, or on shelves supported thereby, instead of supporting the frame upon the walls, until he had made 12 other claims, and then rested it upon the words: "The combination, with the posts and girts, of the angle plates connecting them, and forming supports for the veneer shelves." Such a claim,

in our opinion, restricts the patentee to the combination of the specific elements it names and their equivalents, and is a clear renunciation of the broad claim the appellant makes before this court.

If there was any doubt of the soundness of this view, a reference to the fifth and ninth claims of the patent would dispel it. The fifth claim is for the combination of the frame, laminated posts, girts, and braces, and the exterior covering of nonconducting material, "and a stone or other veneering exterior thereto, and supported on shelves secured to the framing, substantially as set forth." The ninth claim is for the combination, with the posts and braces, of the wire lath, the nonconducting packing, "and the veneering, supported by shelves and anchor rods, substantially as and for the purposes set forth." These claims, when compared with the absence of the veneering and the shelves from the combination described in the thirteenth claim, lead irresistibly to the conclusion that it was not by mistake or inadvertence that they were omitted from that claim, but because the only use of them the patentee claimed or intended to claim as his invention or discovery was in combination with the laminated posts and the nonconducting covering.

The thirteenth claim must accordingly be restricted to the specific combination it describes, and the next question is, did the appellee make use of that combination? In the court below the appellant insisted that the building of the appellee infringed upon the seventh, eighth, and thirteenth claims of this patent. It is conceded in this court that there was probably no infringement of the seventh and eighth claims, and the record clearly sustains the concession. The laminated tapering framing posts are an essential element of each of those claims, as they are of every claim in the patent except two, and no such posts were used in appellee's construction. He used posts each of which was composed of four Z-bar irons, one of the webs of each of which was bolted to a central plate. They were not formed of metal plates in layers secured with their flat sides together so that the plates would break joints, they were not continuous from the base to the top of the building, and they were not made to diminish in thickness for the successive stories by the omission of an outer plate at proper intervals. As we have said, the chief object the patentee thought he attained by his invention was the prevention of the undue expansion and contraction of the iron or steel frame on account of heat and cold, and the laminated posts and the thick covering of mineral wool or other nonconducting substance were the two elements in his improvement upon which he relied to accomplish this end. The absence of these laminated posts from the structure of the appellee is a conclusive answer to the charge of infringement, not only of the combinations described in the seventh and eighth claims, but also of that described in the thirteenth; for it is evident that "the posts" there claimed, in combination with the girts and angle plates, are none other than the laminated posts described in the specifications, and claimed either alone or in combination by this patentee 12 times in this patent. It was not any metal posts in combination with the girts and angle plates that he intended to claim here, but the laminated posts which he described as essential

to the purposes of his invention. It was not the posts, but the lamination of the posts, and their construction in the manner he described, that was the indispensable element of this combination. Iron or steel posts of other construction might be subject to undue expansion and contraction. The claim of the patentee was that such laminated posts as he had described would not be. It follows that any combination which contained no laminated iron or steel posts, although it did contain metal posts, lacked an indispensable element of the combination in the thirteenth claim in this patent, and could not infringe it. All the elements of this combination were old, and the absence from it of a single essential element was fatal to the claim of infringement. Hailes v. Van Wormer, 20 Wall. 353, 372; Bragg v. Fitch, 121 U. S. 478, 483, 7 Sup. Ct. 978.

The decree below must be affirmed, and it is so ordered.