## DIAMOND DRILL CONTRACTING CO. v. MITCHELL et al.

(Circuit Court of Appeals, Ninth Circuit. December 6, 1920.)

No. 3479.

1. Patents ⬅️328—Reissue for drill void for laches in making application.

   The Stone reissue patent, No. 14,356, for improvements in diamond core drills, *held* void for laches in not applying for the reissue until 13 years after issuance of the original patent.

2. Patents ⬅️138(2)—Reissue not granted, where other conflicting patents granted.

   A reissue should not be granted after a delay of several years in making application, during which other patents have been granted for new

.inventions in the same art, which have gone into use and which would infringe the reissue.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit in equity by the Diamond Drill Contracting Company against William J. Mitchell and others. Decree for defendants, and complainant appeals. Affirmed.

The appellant, as assignee of Frederick Stone, to whom had been granted on May 11, 1904, letters patent No. 761,332, for an improvement in core drills, brought a suit against the appellees herein for infringement of said patent. One of the defenses interposed by answer was a prior patent for the same invention or improvement issued to Samuel W. Douglass, on November 3, 1891. The appellant thereupon dismissed the suit and caused application to be made to the Patent Office for a reissue, on the ground that the original patent was defective and inoperative, by reason of the patentee claiming as his own invention more than he had a right to claim as new, and stating that the error arose by inadvertence, accident, or mistake on the part of the Patent Office, and without any fraudulent or deceptive intention on the part of the applicant. The application was at first rejected, on the ground that the new claims were anticipated by the Douglass patent; but, upon the appellant filing affidavits to the effect that the Douglass patent was inoperative, the application was finally allowed, and on September 11, 1917, reissue letters patent No. 14,356 were granted.

The appellant thereupon brought the present suit against the appellees, who were the defendants in the prior suit. The appellees by answer denied infringement and challenged the validity of the reissue. The court below was of the opinion that the reissue letters patent were invalid, first, because the application therefor was not timely made; and, second, because the reissue patent seemed to cover an entirely new invention, not disclosed by the original patent, and also held that the devices manufactured and used by the appellees did not infringe.

Reese H. Voorhees and H. W. Canfield, both of Spokane, Wash., for appellant.

Chandlee & Chandlee, of Washington, D. C., White & Randall, of Spokane, Wash., and C. E. Doyle, of Washington, D. C., for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] We find it unnecessary to consider the question of infringement, for the reason that we are clearly of the opinion that the decree of the court below dismissing the bill should be sustained, on the ground of the appellant's laches in applying for the reissue letters patent. Between the date of the original patent and the application for the reissue 13 years intervened. In order to justify a reissue, it must clearly appear that the original patent was defective, and inoperative to protect the invention intended, that the defect and inoperativeness arose from inadvertence and mistake, and that the patentee has not, by lapse of time and laches, abandoned his right to have the correction made. The patentee of an invention dedicates to the public everything which he does not specifically claim. The public has the right to rely on the dedication, and when others manufacture and put into use a device which embodies that which has been so dedicated to public use, the

presumption is that they have done so in reliance upon the dedication, and the inventor is not permitted by reissue to withdraw his dedication, after it has been accepted and acted upon. It has been held that, in the absence of special circumstances, a reissue should not be granted after a delay of more than two years (Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783); and the rule is strictly applied in cases where, during the delay, others have taken out patents in the same art which would infringe the reissue (James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Moffitt v. Rogers, 106 U. S. 423, 1 Sup. Ct. 70, 27 L. Ed. 76).

The appellant contends that no lapse of time within the life of the patent bars an application for a reissue in a case where the application narrows the claims, rather than broadens them. It is true that some of the courts have intimated that lapse of time may be of small consequence on an application for reissue, where the original claim is too broad. But there is no room for the distinction in cases where, as here, other inventors, relying upon the state of the art, have patented new inventions and the same have gone into use. Said Judge Coxe in Carpenter Straw-Sewing Mach. Co. v. Searle (C. C.) 52 Fed. 809 (decision affirmed by the Circuit Court of Appeals 60 Fed. 82, 8 C. C. A. 476):

"If an inventor, holding a patent with a void claim, has slept upon his rights for years until other rights have become fixed, what possible difference can it make, upon principle, whether he invades those rights and secures an inequitable advantage by means of a broader claim or a narrower claim? The complainant here seeks to do by a narrower claim (assuming it to be narrower) precisely what other complainants have vainly sought to do by an expanded claim. It cannot be doubted that the attempt is as inadmissible in the one case as in the other."

See, also, Pelzer v. Meyberg (C. C.) 97 Fed. 969, and Hoskin v. Fisher, 125 U. S. 217, 8 Sup. Ct. 834, 31 L. Ed. 759.

Stone's original patent contained no description of means for delivering water into the core barrel from the rod, or means for discharging water from the top of the core barrel exteriorially to the rod. The first five claims broadly include "means," without specifying them. Thus claim 1 is:

"(1) In a drill of the character described, the combination with a rotatable hollow rod and a shell rigid therewith, a concentric inner core barrel, means for delivering water into the core barrel from the rod, and means for discharging water from the top of the core barrel exteriorially to the said rod."

When the appellant was confronted with the Douglass patent, which exhibited means for delivering and discharging water to and from the core drill, it dismissed its prior suit, and its assignor surrendered the patent, applied for the reissue patent, and changed the claims. In his oath forming part of the application, the inventor stated that he had no knowledge of the Douglass patent at the time when he made his invention and filed the original application, that he believed that he was the original and sole inventor of the return water principle in core drills, that the gist of those claims, and the real gist of his invention, was in the use of a return water connection "coupling" having its ports all self-contained.

The first five claims of the reissue patent were accordingly framed to set forth what was claimed to be the gist of the invention. Claim 1 is as follows:

"(1) In a core drill, the combination of a hollow drill rod, a core barrel shell, and a plug member at the upper end of the core barrel shell, a core barrel supported by the plug member within and spaced from the core barrel shell, water connections in the plug member for the downward passage of water from the drill rod to the space between the core barrel shell and the core barrel, and return water connections in the plug communicating with the top of the core barrel and having their outlets extending through the circumferential wall of the plug member to the exterior of the drill."

The language of these claims shows that the inventor now makes as the third element of the claims a special form of plug or hanger or coupling having self-contained passages for conveying water. There was no reference in the original specifications to the water passages as being contained wholly in a plug or coupling, and there was nothing in the original patent to indicate to the appellees herein or to the public generally that the inventor claimed any special device for discharging water into the core barrel from the rod, or for discharging water from the top of the core barrel exteriorally to the rod, or that any special mode of delivery or discharge of water was his invention, or that the claims were for other than well-known "means" for the use of water designed to co-operate with the other elements of the combination, which were the drill with a rotatable hollow rod and a shell rigid therewith and a concentric inner core barrel, so as to make an operative unit, for it was stated in the original specifications:

"It is necessary in all diamond core drill work, when the drill is in operation, to force a current of water to the bottom of the hole in order to wash away the cuttings and keep the diamonds cool."

The appellee Mitchell in the year 1914 purchased the Jenkins invention, for which letters patent subsequently issued on February 15, 1916, No. 1,172,140. In February, 1915, Mitchell caused careful examination to be made of the records of the Patent Office, and, relying on the facts thus ascertained, he manufactured a large number of core drills which are now said to infringe the appellant's patent. He also manufactured a large number of core drills under a patent to Gibeau, issued April 11, 1916, No. 1,179,173, but which he acquired after the reissue here in question. Said Judge Sanborn in Buffington's Iron Bldg. Co. v. Eustis, 65 Fed. 804, 13 C. C. A. 143:

"It would be rank injustice to permit a patentee, after a combination or device that he did not claim has gone into general use, and years after his patent was granted, to read that combination or device into one of the claims of his patent, and to recover for its infringement of every one who has used it on the faith of his solemn declaration that he did not claim it."

The mere fact that Stone at the time of making his original application for patent did not know of the existence of the Douglass patent, which had been issued 12 years prior thereto, is not sufficient to show proper diligence on his part in discovering the alleged inoperativeness of his patent. Had he examined the records of prior patents, he would

have seen that Douglass had claimed "means" for water supply not dissimilar to his own.

"The law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it. Not to improve such opportunity, under the stimulus of self-interest, with reasonable diligence, constitutes laches, which in equity disables the party who seeks to revive the right which he has allowed to lie unclaimed from enforcing it to the detriment of those who have in consequence been allowed to act as though it were abandoned." Ives v. Sargent, 119 U. S. 652, 661, 7 Sup. Ct. 436, 441 (30 L. Ed. 544).

The decree is affirmed.