NATIONAL HOLLOW BRAKE BEAM CO. et al. v. INTERCHANGEABLE BRAKE BEAM CO.

(Circuit Court, E. D. Missouri, E. D.    January 24, 1900.)

No. 4,047.

1. PATENTS—ANTICIPATION—CAR BRAKES.
      The Westinghouse patent, No. 345,093, for a car brake, claim 6, the principal feature of which is the location of a slot for the reception of a brake lever in the strut between the compression member and the tension member of a trussed brake beam, was so fully anticipated in the prior art as to deprive it of patentable novelty.

2. SAME—LIMITATION OF CLAIMS BY AMENDMENT—ESTOPPEL.
      Where a patentee has limited his claim by amendment after rejectment by the patent office, he cannot be heard to contend that the claim allowed

has the breadth of the claim rejected, but must be held to have abandoned or surrendered to the public the broad original claim, except as modified.

**3. SAME—CONSTRUCTION OF CLAIMS—IMPROVEMENTS ON OLD DEVICES.**

A patent to one who has merely made an improvement on devices that perform the same function before and after the improvement should be limited, by a strict construction, to the very improvement described and claimed, or mere colorable evasions of it, so as to leave the unappropriated field open to other improvers.

**4. SAME—CAR BRAKES.**

The Hein patent, No. 361.009, for a brake beam for railway cars, claim 2, which covers "the combination in a brake beam of a hollow beam, a strut, and plugs or caps, 8, and a truss rod, 3, which extends through the caps, 8," if disclosing patentable novelty, is so limited by the prior art, and by amendment in the patent office, as to require a very narrow construction, confining it, as to the caps employed, to the particular construction of "caps, 8," as shown by the drawings. As so limited, *held* not infringed.

**5. SAME—PATENTABILITY—FUNCTION OF A MACHINE.**

The function of a machine or the result produced by its operation are not patentable.

**6. SAME—CAR BRAKES.**

The Hein patent, No. 480,194, for a brake beam, claims 1, 2, and 7, the essential feature of which is a camber given to the compression member of a trussed brake beam by screwing up the nuts on the ends of the tension member, so as to spring the beam from a straight line and retair it in that position, is void; the production and maintenance of such camber being merely a function or operative effect of the mechanism, which was itself old and well known in the art, and therefore not patentable. Such claims were also anticipated by the Westinghouse patent, No. 149,902, and the previous Hein patent, No. 361,009.

**7. SAME.**

Claims 3 and 4 of such patent, which relate chiefly to a notch in the end of a tubular brake beam to engage with a lug on the inside of the socket of the brake head, for the purpose of holding the latter in place, and preventing it from rotating on the beam, is void for want of patentable novelty.

**8. SAME.**

Claims 5, 6, and 8 of said patent, in so far as they cover brake heads having cup-shaped recesses for the insertion of the end of the brake beam, are limited by the proceedings in the patent office, and the amendments there made, to recesses or sockets with a closed end, to prevent the sliding of the brake head along the beam, and are not infringed by a brake head with an open socket, and held in place by other means.

**9. SAME—ANTICIPATION.**

A device which is an infringement, if later than a patent, constitutes an anticipation, if earlier.

**10. SAME—PATENTABLE INVENTION.**

The construction of lugs or projections on the inside of the flanges of a clamp, to hold them at the required distance apart, when drawn together by a bolt passing through them, so as to prevent them from binding upon a chain, which passes between them, does not involve patentable invention.

**11. SAME—INVENTION—CLAMP FOR BRAKE BEAMS.**

The Robischung patent, No. 430,755, for a clamp for brake beams, claim 2, is void for lack of patentable invention.

**12. SAME—INFRINGEMENT.**

The Robischung patent, No. 466,984, for a brake beam, claims 1 and 2, construed, and *held* not infringed.

**13. SAME—INVENTION—EXTENSIVE USE.**

Extensive use of a patented article is strong proof of utility, but not of invention, and is entitled to consideration, on that issue, only in doubtful cases.

This was a suit in equity for infringement of various patents relating to car brakes. On final hearing.

Paul Bakewell and F. W. Ritter, Jr., for complainants.
Noble & Shields and Geo. S. Payson, for defendant.

ADAMS, District Judge. This is an action for infringement of the following letters patent of the United States: No. 345,093, granted to George Westinghouse, Jr., July 6, 1886; No. 361,009, granted to Phillip Hein, April 12, 1887; No. 430,755, granted to Henry B. Robischung, June 24, 1890; No. 480,194, granted to Phillip Hein, August 2, 1892; and No. 466,984, granted to Henry B. Robischung, January 12, 1892. There are several claims in each of these patents, but complainants, in the present suit, rely upon certain of the claims only, which will be specified as each of the patents is taken up for consideration.

The complainants' title to the patents, while put in issue by the pleadings, is not assailed in argument, and will therefore be assumed to be as stated in their bill. The defenses are, in substance, want of patentable invention, want of novelty or anticipation, and noninfringement.

There are so many claims involved in the determination of this controversy that it seems to me proper to take them up for a separate consideration, in the order above chronologically stated.

The first one is the patent of George Westinghouse, Jr., No. 345,093, dated July 6, 1886. The sixth claim of this patent, which alone is now relied upon by the complainants, is as follows:

"In a brake beam, the combination, substantially as set forth, of a tie bar, a double-inclined truss bar, and an interposed king post or strut, having a slot for the reception of a brake lever between the tie bar and the truss bar."

The particular novelty contended for in this claim is the location of a slot for the reception of a brake lever in the strut between the compression member and the tension member of a trussed brake beam.

The first defense to this claim is that its device lacks novelty. Several patents and one publication are pleaded as anticipations of this claim. They are as follows: The Wellington patent, No. 145,605, granted December 16, 1873; the Westinghouse patent, No. 149,902, granted April 21, 1874; the second Westinghouse patent, No. 243,416, granted June 28, 1881; and the publication or drawing found in the Car Builders' Dictionary, published in 1879, on page 488.

The first two of these patents show a slot in a strut not between the compression and tension members of the brake beam, but at the end of the strut outside of the tension member. The slot, and bolt running through it, as shown in these two patents, are obviously intended to serve the purpose, and perform the function, of a fulcrum for operating a brake lever, by means of which power is applied to the brake beam. It would seem that the location of this slot in the same post or strut between the compression and tension members, as shown in the sixth claim of the patent now under consid-

eration, instead of outside of one of them, would be but a question of common mechanical expediency; but, if this were doubtful, it seems to be made clear by reference to the second Westinghouse patent pleaded as an anticipation, No. 243,416. This last patent shows that the location of the slot in the strut between the members, instead of at the end of one of them, was then a familiar mechanical device. It is true that patent shows a provision for bolting the brake lever to the side of the strut, but the other two patents, namely, the Wellington and first Westinghouse patents, already considered, had, eight years before the granting of the second Westinghouse patent, taught the use of a slot in the strut. A mechanic engaged in the construction of brake beams, therefore, had before him, in 1886, the date of the application for the patent in suit, both features of the former art, namely, the use of the slot in the end of the strut as the place for locating the fulcrum bolt of the brake lever, and also the insertion of a bolt through the strut, between the compression and tension members, to serve as such fulcrum. It is claimed that this last-mentioned device is the mechanical equivalent of the device of the patent, because, according to it, the brake lever straddles the strut, instead of having the strut straddle the lever, as in the patent. But, whether this be correct or not, the prior art, as shown in these prior patents, was such, in my opinion, as to very persuasively, if not irresistibly, lead mechanical skill and ingenuity to the very device of the patent in suit. The patentee had a problem before him, and that was, how and where to apply the brake lever. He knew, by the instruction of the prior patents, that it had been applied in a slot at the end of the strut. He also knew that it had been applied on the outside of the strut, between the compression and tension members, by the use of a bolt, bolting the brake to the strut, and thereby affording it a fulcrum. He was thereby necessarily taught that a slot had been used in which to locate the fulcrum of the lever, and he had also been taught that this fulcrum had been located between the members. It does not seem to me to require any inventive skill to apply this information in the way and manner done in claim 6 of the patent in controversy, by locating a slot for the introduction of the brake lever between the members. Not only so, but the prior publication in the Car Builders' Dictionary of 1879 plainly discloses the slot in the strut, between the compression and tension members, practically as called for in the sixth claim of the patent in suit. The diagram found in this dictionary presents to the eye very clearly the employment of the slot exactly as the same is called for in claim 6 of the patent. I therefore conclude that the device now under consideration is so fully anticipated in the prior art as to devest it of all patentable novelty.

The foregoing conclusion renders unnecessary any consideration of the voluminous evidence relating to prior use, relied upon by the defendant in this case.

The next patent, in order of time, is the Hein patent, No. 361,-009, the second claim of which is alleged to be infringed by the defendant. This claim is as follows:

"The combination in a brake beam of a hollow beam, a strut, end plugs or caps, 8, and a truss rod, 3, which extends through the caps, 8, and is provided with nuts, substantially as and for the purposes specified."

When this patent was originally applied for, the patentee claimed broadly as follows: (1) A hollow metallic brake beam; (2) the combination with a hollow metallic brake beam of a truss rod and strut; (3) the combination with a hollow metallic brake beam of a truss rod and end caps. It must be observed from the foregoing that the claim, as originally made, was very broad, with respect to end caps; in fact, the combination, as first claimed, contemplated any kind of an end cap. The patent office, referring to Westinghouse patent, No. 142,600, of September 9, 1873, and Hedrick patent, No. 322,099, of July 14, 1885, refused to grant the patent, deciding that the invention was substantially anticipated by the references made. After argument by the attorney of the patentee, the same claims, with slight modifications, were again submitted for reconsideration. The patent office, after citing Westinghouse patent, No. 345,093, of July 6, 1886, and Eddy Patent, No. 176,522, as additional references, again refused the patent. Afterwards, the patentee amended his claims, canceling the first, second, and third claims above referred to, and substituted, in lieu thereof, claim 2 of the patent as now sued on, which, as already seen, calls for a combination in a brake beam of a hollow beam, a strut, and end plugs or caps, 8. As I construe this action of the department, it is the equivalent of saying that a combination of the hollow metallic brake beam with a truss rod and end caps, generally, was not, in the light of the art as it then existed, patentable. The patentee, instead of appealing from the decision of the examiner, acquiesced therein, and amended his claims so as to limit the same to a combination of a truss beam with the peculiar plugs or caps marked "8" in the drawings, and it is this combination to which the complainants are entitled, under the second claim of their patent, and nothing else.

It seems unnecessary to cite any authorities to the proposition that when the patentee limits his claim, after rejection by the patent office, he cannot be heard to contend that the claim allowed has the breadth of the claim rejected, or that he is entitled to such construction of his allowed claim as would be the equivalent of his rejected claim. He has voluntarily acquiesced in a limitation, and must be held to have abandoned or surrendered to the public the broad original claim, except as modified by the amended and allowed claim. Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382, and cases cited; Brill v. Car Co., 33 C. C. A. 213, 90 Fed. 666.

Again, this claim is for an improvement in brake beams for railway cars. Constructions involving all the elements of claim 2, except possibly the particular end plugs, 8, were old and well known at the time the application was filed. Such was the statement of the patent office at the time it rejected the original claims. The patent now under consideration is one of the many steps taken in the development of the modern brake beam. The inventive genius of many persons had been, and thereafter continued to be, employed

in this field of invention. End caps of certain kinds and descriptions had been before that time resorted to for the purpose of tightening or making fast the tension rod. Under such circumstances, each inventor ought, in my opinion, to be limited to his own particular improvement, and the doctrine of equivalents, if applied at all, should be strictly construed, so as to fairly give the patentee the full benefit of his own invention, without depriving other geniuses engaged in the same general line of invention of the rewards of their own discoveries. Judge Sanborn, in the case of P. H. Murphy Mfg. Co. v. Excelsior Car-Roof Co., 22 C. C. A. 658, 76 Fed. 965, speaking on this general subject, says:

"The claims and specifications of every patent must be read and construed in the light of a knowledge of the state of the art when it was issued. A patent to the original inventor of a machine or construction, which first performs a useful function, protects him against all machines and constructions that perform the same function by equivalent mechanical devices. But a patent to one who has simply made a slight improvement on devices that perform the same function before and after the improvement is protected against those only which use the very improvement he describes and claims, or mere colorable evasions of it."

In the case of Machine Co. v. Hanes (C. C.) 70 Fed. 859, an expression is found which meets my approval, as follows:

"I am of opinion that well-settled principles of law, reason, and common justice require that mere improvers in combinations of old elements and ingredients should be limited by a strict construction of their descriptive claims and specifications, so as to leave the unappropriated field of art open to other improvers, that they may be encouraged to exercise their industry and inventive genius."

In the light of these considerations, the particular invention of claim 2 of the Hein patent must be considered. The end plug or cap there called for is of peculiar construction, rendered necessary by reason of the fact that the two ends of the tension rod pierce the extremities of the beam or compression member at an angle, and require a cap or plug of a beveled or triangular character, through which the ends of the rod may pass obliquely, and be made fast by nuts seated on the ends of the rod. This end plug or cap is provided with a circular recess and shoulder, so as to enter for a short distance into the end of the hollow beam, and fit closely there, much like the cork enters the neck of a bottle. This end cap or plug, too, is provided on its outer surface with a recess for the nut, so that the nut, when screwed up, is partially below its outer surface. It is this particular plug-like cap, made in one solid piece, with the truss rod extending through it, provided with a nut, as already described, which constitutes the end plug or cap, 8, of the claim. The defendant's device is also a cap necessarily constructed so as to accommodate the entrance of the rod through the end of the hollow beam obliquely, into and through the cap, there to be made fast by a nut seated upon the outer surface of the washer. The purpose or function to be accomplished by the two devices is obviously the same, but the defendant's cap lacks the circular recess and shoulder which allows its introduction into the end of the hollow beam. In addition to this, there is no recessed nut seat corresponding to that in the combination of the claim of the Hein pat-

ent, under consideration. The only nut seat of the defendant's construction is the ordinary inclined washer, which, I believe, was well known in the art long before the plug for the Hein patent was made. It thus appears that there is, at least, a substantial difference between the defendant's construction and the device of claim 2 of the Hein patent. This claim of the Hein patent calls for the particular end plug or cap which I have already described, and designates it as the one shown in the drawings of the patent by the figure "8." This, being a combination patent for an improvement on old devices that perform substantially the same function, must be restricted and confined to the specific combination described in claim 2, as indicated not only by the words employed, but by the figures of reference in the drawings, to which reference is particularly made, and each element specifically pointed out in either of these ways is an essential part of the combination. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059, and cases there cited. In this last-mentioned case the court gives, as a reason for the rule just announced, one which is entirely apposite to the case in hand, namely: "For, if not so restricted by the letters of reference, the effect would be to make the claim co-extensive with what was rejected in the patent office." It is stated in the case of P. H. Murphy Mfg. Co. v. Excelsior Car-Roof Co., supra, that the unquestioned rule is "that the absence from a device or construction that is alleged to infringe of a single essential element of a patentable combination of old elements is fatal to the claim of infringement." Applying these well-established rules, I am constrained to hold that if the second claim of the Hein patent is valid,—as to which I need express no opinion,—the limitations imposed upon it by the proceedings in the patent office narrow the claim to the specific device called for, as already seen, and, so narrowed, the defendant's device does not infringe. See Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, 29 L. Ed. 67.

Strenuous contention was made by counsel for the defendant that the prior art, as developed by the evidence in this case, so shows the particular combination of claim 2 of the Hein patent as to rob it of all patentable novelty; but it is unnecessary to pass upon this contention, under the view taken on the issue of infringement. It may, however, be confidently said that the prior art, added to the result of the proceedings in the patent office, already referred to, subject claim 2 of the Hein patent to a very narrow and limited construction, and, so treated, the defendant must be held not to infringe.

The second Hein patent, No. 480,194, dated August 2, 1892, will next be considered. This patent has eight claims, all of which are alleged to be infringed by the defendant. Of these, the most important are those relating to the production and maintenance of camber in a trussed brake beam. This invention—that is, camber—is said to reside in the first, second, and seventh claims of the patent. These are as follows:

"(1) A metallic brake beam, consisting of a compression member, a tension member, and an interposed strut, the compression member having a camber,

and the beam structure containing means of adjustment, whereby the camber of the compression member is produced, and the resiliency of the beam made available.

"(2) A metallic brake beam, consisting of a hollow compression member, a tension member, and an interposed strut, the compression member having a camber, and the beam structure containing means of adjustment, whereby the camber of the compression member is produced, and the resiliency of the beam made available."

"(7) In a trussed brake beam, the combination of a tension member, having threaded ends and nuts therefor, a strut, and a cambered compression member, which maintains the tension of the parts, and prevents the rotation of the nuts, substantially as specified."

A careful reading of these claims, with the specifications of the patent, discloses that the alleged invention consists of so combining, in a then well-known trussed brake beam, a compression member, a tension member, and a strut as thereby—that is, by means of adjusting these elements—to produce and maintain a camber of the compression member or beam proper of the brake. The camber here referred to is a bending or springing of the beam, and the means here referred to are screwing up the nuts on the ends of the tension member; or, as stated in the specifications, "when the parts are put together the nuts, ff', are tightened up, so as to draw the brake beam from the straight line indicated by dotted lines to the shape shown in full lines. This gives the desired camber to the brake beam." The testimony of all the witnesses, as also the proceedings in the patent office, confirms the manifest meaning of the patent itself, namely, that the camber or resilient spring of the patent is produced by means found in the beam itself. The patent, therefore, is not for camber, abstractly considered, but for that particular camber produced and maintained by means of the tension rod co-acting with the other elements of the combination, in the way and manner already referred to, by tightening up the nuts, as shown in the specification, and as testified to by Mr. Leigh, complainants' expert, in defining the adjustable camber of the patent. He says it is "a bending or arching of the compression member, and produced by means of the threaded ends of the tension rod and the nuts." A noticeable feature of the patent is that it nowhere describes the object to be obtained or purpose to be served by the camber of the patent. This omission is of no significance in itself, as, without doubt, the patentee, if the patent is valid, may employ the camber for any purpose for which it may be properly utilized. But this omission may be of some value in interpreting the true meaning of the patent. Notwithstanding the silence of the patent on this point, it appears from the evidence that the function of the camber is to create a continuing, constant, elastic, resiliency and firmness in the beam, so that, by its tendency to spring back to its normal condition in a straight line, the nuts at the ends of the tension member are always kept tight, and their loosening, occasioned by the dangling of the brake beam while not in action, is prevented. In other words, the constant acting resiliency of the beam, created by the camber, serves to preserve the beam, and keep it from loosening up and deterioration, while not in action, and keeps it always ready for sudden emergencies and effectual service. Anoth-

er result of this camber in the beam is said to be that it offers a ready expediency for coning the face of the brake shoe to the tread of the wheel. It is said that the tendency of the shoe, when the beam is in action, is to crowd into the throat of the wheel, and thereby greatly lessen the frictional area of the shoe and wheel tread, and that by the bend or camber of the beam, as called for by the patent, the face of the shoe is brought to operate at a right angle against the oblique surface of the tread of the wheel as usually constructed, and that thereby more effectual work is done in braking than would be done if the shoe operated against the tread of the wheel obliquely. These results, however excellent in their character, manifestly and obviously flow from the arching or cambering of the beam,—so obviously, in fact, that even the patentee did not deem it necessary to describe them; so obviously, indeed, that any person familiar with mechanical action or the laws of force would readily see and appreciate them. It is axiomatic that the axis of the shoe, when brought by the bending process into parallelism with the oblique surface of the tread of the wheel, renders it physically certain that the shoe, applied at a right angle to the axis, will bear evenly and uniformly on the oblique surface. It is also very plain that the constant reacting effect or resiliency of a spring or arched bow tends, by the pressure of the nuts on the thread, to tighten nuts, when they are employed to maintain the spring or arch.

Considering these things, it seems to me that the patentability of the invention under consideration is not at all affected by these obvious uses which the camber, when created, actually served. The question then is whether the production of camber, in and of itself, by the means described in the claims under consideration, irrespective of the obvious undescribed uses which it was afterwards made to serve, is patentable. The defendants say: First, this camber is nothing but a result or function of a machine, and for this reason, alone, is not patentable; second, that the prior art shows the particular camber of the patent, and therefore that it is not novel.

Referring to the first of these defenses, it can be confidently assumed from the evidence that the machine or parts combined in the three claims under consideration, namely, the compression member, the tension member, and the strut, co-operating with the nuts, as described in the specification and as claimed in the seventh claim, are each, separately and as there combined, old and well recognized in the prior art. It cannot be disputed that these elements and this combination had been employed long before in the art of brake-beam construction and other analogous branches of industry, and that they had been so employed for the special purpose of constructing a trussed brake beam, and maintaining its integrity as such and its efficiency in action. It is not necessary to refer to any other patent for a full corroboration of this statement than the first Hein patent, No. 361,009, of date April 12, 1887, already considered. In the device of that patent are found all these elements co-acting for the purposes stated.

For the purpose of disposing of the question raised by this first defense, it may be conceded, whatever be the actual fact, that prior to the patent in suit the nuts had never been so tightened up as to produce the resilient arch or camber of the patent. With these assumed facts in view, and with the further fact abundantly established, by the specification of the patent and the evidence of both complainants' and defendant's witnesses, that the resiliency or camber in question is produced by the tightening of the nuts on the end of the tension rod, as found in this old combination, the question for solution is whether the camber or resiliency thus produced is so a result of the operation of a machine or so a function of a machine as in and of itself to be nonpatentable.

The leading case on the subject of patentability of a result of operation or function is Corning v. Burden, 15 How. 252, 16 L. Ed. 683. In that case, while discussing the difference between a process patent and a machine patent, the court lays down the rule that "a man cannot have a patent for the function or abstract effect of a machine, but only for the means which produce it."

In the case of Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650, the court, in construing the patent act, says:

"We find here no authority to grant a patent for a principle or a mode of operation or an idea or any other abstraction. A machine is a concrete thing, consisting of parts or of certain devices and combination of devices. The 'principle' of a machine is properly defined to be its mode of operation, or that peculiar condition of devices which distinguish it from other machines. A machine is not a principle or an idea. * * * Because the law requires a patentee to explain the mode of operation of his peculiar machine, which distinguishes it from others, it does not authorize a patent for a mode of operation, as exhibited in a machine."

In Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103, the supreme court says:

"Patents for a machine will not be sustained if the claim is for a result, the established rule being that the invention, if any, within the meaning of the patent act, consists in the means or apparatus by which the result is obtained, and not merely in the mode of operation, independent of the mechanical devices employed."

In the case of Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899, the court, after considering many cases involving the question what is and what is not patentable, stating generally that the operation or function of a machine is not patentable, concludes its opinion by saying:

"Medart [the patentee] may or may not have been entitled to a patent for the machinery employed in the manufacture of the belt pulleys in question, but he certainly was not entitled to a patent for the function of such machine, nor to the completed pulley, which differed from the prior ones only in its superior workmanship."

In the case of Westinghouse v. Power-Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, after reviewing the cases already cited and many others, the supreme court states as its conclusion as follows:

"These cases assume, although they do not expressly decide, that a process, to be patentable, must involve a chemical or other similar elemental action, and it may be still regarded as an open question whether the patentability of processes extends beyond this class of inventions. Where the process is simply

the function or operative effect of a machine, the above cases are conclusive against its patentability."

The question now is whether the production of the camber of the patent is a function or operative effect of a machine, within the rule so laid down by the supreme court. I have given the testimony of the witnesses on this vital point my most careful and exhaustive consideration, and am unable to reach any other conclusion than that the camber of the patent is nothing else than the effect of the operation or the working of the machine made up of the elements of the claims. The defendant's expert testimony is to this effect, and Mr. Cloud, one of the complainants' experts, admits that his understanding is that the "camber," in the sense the complainant uses the term, is a result or condition. And how can it be otherwise? The machine is operated solely by tightening up the nuts, and, in the language of the patent, "this gives the desired camber to the brake beam." This camber, then, is nothing else than the operative effect of the machine, and is not patentable.

But it is contended that claim 7 calls for the maintenance of the camber as well as its production. But the maintenance, in my opinion, is the result of operating the machine by screwing up the nuts, the same as its production is such result. The same force which produces the camber, when continued, maintains it. This force is the resilient tendency of the beam, which holds the nut in place by maintaining a constant pressure against the threads on the ends of the tension rod.

The foregoing conclusion effectually disposes of the camber claims of the second Hein patent, but, as much evidence has been taken and elaborate arguments made on the defense of want of novelty, I deem it proper to briefly express the views of the court on this feature of the case. The prior art, undoubtedly, shows all the physical elements of the camber claim. The patent itself recognizes the prior existence and employment of camber in the art of brake-beam construction. The patentee says:

"I have been aware that a brake-beam structure consisting of a beam, a truss rod, and interposed strut, the beam having a bend or camber produced by the act of the metal in the act of forming the camber, and prior to the welding of the parts forming the truss, is not broadly novel."

This admission is sufficient to meet any broad claim to any and all camber. The history of this patent, as shown by the file wrapper, shows how this admission was brought about. In his first and subsequently amended claims the patentee sought to cover (1) a beam with any camber; (2) a trussed beam with any camber; (3) a hollow trussed beam with any camber; (4) a beam with a camber produced by tension, generally. All of these claims were rejected, because old, and the rejection was acquiesced in by the patentee. The camber claims, when and as finally allowed by the patent office, were for a particular limited kind of camber, namely, that produced and maintained by means within the beam. Even as so limited, the allowance of the camber claims was seriously contested and refused, by both the examiner and the board of examiners in chief. The commissioner of patents, on an appeal to him, reversed the board of examiners in

chief, for reasons which he did not state, and which do not appear in the history of the patent. The original examiner and the board of examiners in chief based their refusal to allow these claims, as finally allowed, principally on two former patents, which are now cited and relied upon by defendants as anticipations of the device of the camber claims. These patents are the Westinghouse patent, No. 149,902, and the first Hein patent, No. 361,009, already considered. The Westinghouse patent, so relied upon, was for an improvement in railway brake beams, and claimed distinctly all the physical elements of the patent in suit, namely: "(1) A brake beam consisting of the bar, B, boxes, D, tension rods, a, and post, b, combined substantially as described." The device of this claim, as shown in the drawings, is plainly a trussed brake beam, like that of the patent in suit, except that bar, B, which is the compression member, is made of wood, instead of iron, and the tension rods are two, instead of one, as in the patent. The post, b, is the strut of the patent in suit, to all essential purposes. The description of the patent shows the use of nuts to tighten up the tension rods (the same function as is performed by them in the patent in suit), and says: "This tightening may be carried so far as to give the bar, B, a slight crown or arch, as shown in Fig. 1." By reference to Fig. 1 of the drawings, there appears to be an arched beam. True, there is no description of the function to be served by crowning or arching the beam in this patent (neither is there in the patent in suit), doubtless, as already explained, because its benefits arising from the resiliency of the arch, in the way of stiffening and tightening the structure, were palpable. It seems to me that the camber of the patent in suit is undoubtedly described in this Westinghouse patent, and that, too, in substantially the same language as is employed in the patent in suit. It is said in the Westinghouse patent, substantially, that tightening up the tension rods holds the bar, B (corresponding to the compression member of the device in question), securely in the proper place, and this tightening, namely, of the tension rods, "may be carried so far as to give the bar, B, a slight crown or arch, as shown in Fig. 1." The description of the patent in suit says, substantially, that on the ends of the tension rods are placed nuts, ff', and, when the parts are put together, the nuts, ff', are tightened up, and the camber results. The tightening of the nuts, of course, is a way of tightening the tension rods on whose ends they appear, and by such tightening the rods are shortened or tightened. Exactly what is said in the Westinghouse patent will result in the "crown" or "arch," which are synonyms for "camber." For the purpose of showing whether the camber of the patent appears in the Westinghouse patent, it is immaterial how or by what mechanism the tension rods are tightened. The only thing now to be ascertained is whether the Westinghouse patent shows the camber produced by the tightening of the tension rods, however this tightening may be brought about, provided only that it be brought about by means inherent within the structure itself.

But it is said this Westinghouse camber is useless, unappreciable, and impracticable, because the beam is made of wood, and is not susceptible of much arching, or of permanent continuance in

99 F.—49

the arched or cambered condition. I do not deem it necessary to enter into any extended consideration of the evidence on this point. It is somewhat conflicting, but it clearly shows that the Westinghouse wooden beam may be cambered—in fact, it was actually cambered to a very appreciable degree in my presence at the hearing of this case—by the process of tightening up the nuts which controlled and tightened the tension rods. It is also a practicable beam, and is used today by one or more large railroad systems in the operation and running of their trains. I have no doubt the hollow iron beam is a better beam, but its superiority is not per se invention; it is only the result of workmanship, or, possibly, of choice of material.

In my opinion, the Westinghouse patent so taught and described the camber of the patent in suit that any skilled mechanic, following its teachings, could have produced it. This, in my opinion, is so, irrespective of the first Hein patent of April 12, 1887; but, when the instruction of the Westinghouse patent is considered in the light of the first Hein patent, it scarcely admits of a doubt that the camber of the patent in suit is not only vaguely suggested (as admitted by counsel for complainants), but clearly and distinctly taught, and that, too, with all the means requisite for its production and maintenance.

The first Hein patent, as already seen, calls for the same hollow metallic beam, the same strut, the same tension rod, and the same nuts (so far as their operation on the tension rods acts) as are called for in the patent in suit. The first Hein patent, therefore, contains all the elements of the three claims now under consideration, and thus, potentially, the production of the camber in question. Accordingly, it is clear that the first Hein patent is a full anticipation of the patent in suit, if I am correct in holding, as already indicated, that the function or operative effect of a machine is not patentable. If I am incorrect in this holding, it certainly appears, and Hein must conclusively be presumed to have known, that in his own first patent there were all of the physical elements of the patent in suit, and all the energies operant therein requisite and necessary for the production and maintenance of the camber in question. Assume, now, all these elements to be properly assembled, as shown in the first Hein patent, which has a more elastic metallic beam than that found in the Westinghouse patent, and therefore in itself suggestive of bending; assume, also, what the record conclusively shows, that camber, per se, was old at the date of the application for the patent in suit; and assume, further, which I think may be fairly done, that the uses of camber were so obvious as not to require description in the patent; and then add to these assumptions the instructions or teachings of the Westinghouse patent, with which Hein must also be presumed to have then been familiar, to the effect that, by tightening up the rods, camber could be produced,—and it seems to me that the facts so assumed constitute information ample, full, and precise enough to have enabled any person skilled in the art to which that information relates to readily produce and maintain the camber of the patent in suit with-

out the exercise of any inventive faculty whatsoever. Such being the views of the court, it is unnecessary to refer to the Preston patent, which, if applied for on the date it appears to have been, as shown in the printed patent in evidence, would be a material corroboration of the effect already given to the prior art. But, as complainants' counsel contend that there is no sufficient evidence as to when the patent was applied for, I do not take it into consideration. It is also unnecessary to refer to the many other patents pleaded as anticipations, or shown in evidence, as illustrating the prior art.

On the whole case, I am abundantly satisfied, in the light of the art as it existed at the time of the application of Hein for his second patent, that no patentable novelty is involved in the camber claims.

The third and fourth claims of the second Hein patent are now to be considered. They are as follows:

"(3) The combination with a trussed tubular brake beam, having a slot for the passage of the truss rod, and a notch for the reception of a lug on the brake head, of a brake head having a cupped recess for the reception of the end of the beam, and provided with a lug adapted to enter the recess in the end of the beam, as set forth.

"(4) The combination with a tubular beam, notched at its end, of a brake head having a cupped recess or socket, with a lug corresponding to the notch in the end of the tubular beam, as set forth."

While there are other claims in the combination, found especially in the third claim, it is apparent that both these claims relate mainly to the notch and lug feature of the brake beam in question, or to that arrangement of parts which prevents the rotation of the brake head upon the cylindrical beam to which it is attached. An inspection of the model of complainants' beam shows a shallow notch in the periphery of the hollow beam at both its ends. These ends, so notched, are inserted in a thimble or cup-shaped recess or socket, made integral with the brake head, and in this way it is intended to provide means for firmly attaching the brake head which carries the shoe to the beam. It being necessary that the brake head should be firmly attached to the beam, so as not to rotate upon it, a lug or projection is placed in the inside of the cup-shaped recess or socket at the end or bottom of the cup, so as to engage the notch in the periphery of the beam, when driven home. It is this notch and this lug, intended to perform this function, namely, to prevent the rotation of the brake upon the cylindrical beam, that constitute the special device of claims 3 and 4, now under consideration. This lug and engaging notch were probably old and well-known expedients for accomplishing the particular purpose claimed for them in the patent in suit, long before the application for this patent; at least, so it seems to me. But, if they were then comparatively new, it seems to me, from the evidence in the case, that they were clearly shown in the drawings of the first Hein patent, already considered. It is true they are located in those drawings somewhat differently than they appear in the device of the patent in suit, but that there are notches in the ends of the beam of that patent, intended to engage lugs in each of the caps of the

brake heads, and that the co-action of these elements was effectual to prevent the rotation of the brakes upon the beam, I have no doubt. These elements are distinctly shown in the drawings and in the model produced at the trial. They are pointed out and clearly defined by the expert witness for the defendant, and very equivocally, if at all, denied by the experts of the complainants. It is true the function to be performed by this notch and lug are not described in terms in the first Hein patent, but their utility seems to me to be so obvious that their appearance in the drawings necessarily and quickly discloses it.

The defendant's beam does not show the exact notch of the complainants' device, but rather the notch of the first Hein patent, in this: that it is not distinct and separate from the slot of the tension rod, but rather a continued opening, extended from the point where the tension rod obliquely enters the hollow beam to the end of the beam itself; the end of the slot serving the same purpose, however, as the distinct and separate shallow notch found in the periphery of the beam of the patent in suit. Neither is the defendant's lug located in the same relative position in the cup of the brake head as that of the complainants. It more nearly resembles the lug of the first Hein patent than that of the patent in suit. The complainants' device, and the device of the first Hein patent, do not show exactly the same construction of lugs and notches, but they each, in my opinion, show the equivalent construction, namely, the lug and the engaging notch or slot, and each employ these agencies to accomplish the same purpose, in substantially the same way. If, therefore, the defendant's construction is an infringement of complainants' patent, the first Hein patent is necessarily an anticipation of complainants' device. That which is an infringement, if later, constitutes an anticipation, if earlier. Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059.

The evidence and argument of counsel have taken a wide range on this point, and many other considerations are called to the attention of the court which might dispose of these third and fourth claims, but I deem it unnecessary, in view of what has already been said, to devote any more time to their consideration. They are, in my opinion, in so far as they relate to the engaging of the lug and notch to prevent rotation of the brake head upon the beam, void for want of patentable novelty. If any special claim of novelty is made for the provision of the third claim, which provides for the perforation of the beam for the passage of the truss rod into it, in lieu of having a continuous slot from the point where the truss rod enters the beam to the end of the beam, it is enough to say that the defendant's device does not infringe any such element of the claim. The other element of claims 3 and 4, namely, the cupped recess for the reception of the end of the beam, will be considered in connection with other claims of the patent.

The next and only remaining claims of this second Hein patent are the fifth, sixth, and eighth. They are as follows:

"(5) A trussed, hollow, or tubular brake beam, having a camber, and having one or more notches at its ends, in combination with brake heads having

cupped-shaped recesses, inclined bearings and one or more projections, and the truss rod, passing through and holding said heads in position.'

"(6) A trussed, hollow, or tubular brake beam, having a camber, in combination with brake heads having cupped-shaped recesses, a truss rod passing through and holding said heads in position, and the inclined bearings for supporting the nuts on the ends on the truss rod."

"(8) In a trussed brake beam, the combination with a cambered compression member of brake heads having cupped-shaped recess for the reception of the cambered compression member, and a tension rod, substantially as and for the purposes specified."

Eliminating from these claims the elements found in other claims already disposed of, there remains in them substantially one feature only for further consideration, and that is the feature of the cupped-shaped recesses or sockets for the insertion of the ends of the compression member or beam into the brake head. These claims, also, in so far as they involve this cupped-shaped recess, had a troublesome experience in the patent office. The claims, as originally filed, were for either a cupped-shaped or hollow socket. As so claimed, they were rejected on references to which I need not now refer, and subsequently, by divers changes, the claims were modified and amended, so as to appear as now found in the claims under consideration. As so modified and amended, they were again rejected by the examiners on references to prior patents, and afterwards allowed on appeal. The final allowance of the claims was made after argument by the patentee's attorney showing, among other things (what is quite apparent from the claims themselves, as finally allowed, and the descriptions and drawings of the patent), that a cupped-shaped recess, as here claimed and allowed, implies a bottom or closed end. In an argument made September 30, 1889, the attorney for the patentee declared the particular advantage or function of a construction embodying the cupped-shaped recess of the claims in question to be that, "by reason of the ends of the recesses of the brake heads being closed, these heads, of course, cannot slip or be drawn along the beam." In an argument made by the attorney on April 10, 1888, he states that the citation of the first Hein patent is avoided by the closed ends of the cup, which the attorney says Hein's first patent did not show.

Without pursuing the argument or proceedings in the patent office further, it may be confidently said, as a result of the evidence in this case, that the hollow brake head or recesses generally, as first claimed, were abandoned on references made by the patent office, and that a voluntary limitation was accepted by the patentee, namely, a cupped-shaped recess alone, which implies, as is admitted, a bottom or closed end, and that the special function or new use to be served by the device of the claims is to prevent the brake heads from slipping or being drawn inwardly along the beam. The defendant's device which is alleged to infringe these claims is one in which the recess for the brake head is not cupped shaped,—that is, it does not have the closed end, but is simply a hollow perforation, just big enough to permit the entry of the cylindrical end of the beam, with no obstacle like the closed end to prevent its sliding through the recess; and it is urged that the defendant employs a device consisting of a cap and washer at the outer open end of the recess, through which the

end of the tension rod extends exactly as it does through the bottom of the cupped-shaped recess of the claims in question, and that by this device the same function is discharged as that which results from the cupped-shaped recess of the claims; in other words, that the defendant's device consists merely of two parts instead of one, as in the claims of the patent under consideration, and is therefore the mechanical equivalent of the device of such claims. It is urged by the complainants' counsel, and many authorities are cited to the proposition, that infringement is not avoided by simply making in two pieces what was formerly made in one piece only. This proposition cannot be denied, provided the device with the two pieces performs the same function and produces the same result as the prior one-piece device. But is it true that the defendant's device performs the same function as the device of the claims in question? I think not. I find nothing in the defendant's device, apart from the operation of the other elements of the tension rod and nuts (which are not now involved), which would prevent the sliding of the brake head inwardly along the beam. Unless tightened up by the tension rod, the brake head proper can slide along the shaft without any physical interruption by the cap and washer. They simply separate—that is, the cap and washer separate—from the end of the tubular beam, while in the device of the claims it is physically impossible for the brake head to slide inwardly along the shaft of the beam, even without the effective operation of the tension rod and nut. The resistance of the bottom of the cupped-shaped recess or socket at once prevents such motion.

But whether this difference of function or result exists in fact or not, it cannot, in my opinion, be now questioned by the complainants. They are estopped from so doing by the enforced amendment of their claims, accepted by the patentee, which limit them to a particular construction. Brill v. Car Co., 33 C. C. A. 213, 90 Fed. 666, and cases cited. They are also estopped from so doing by representations made in the patent office to secure their patent. Their patentee secured the grant with much difficulty, after many citations, and after divers changes, modifications, and amendments, to avoid such citations, and then only upon the representation, voluntarily and repeatedly made, that his device, the socket or recess of the brake beam, was made in one piece, and so made with closed ends, like the bottom of a cup, in order that it might not slip along the shaft inwardly. Under such circumstances, the construction of the patentee's brake head in one piece, in order thereby to perform the particular functions claimed, is a self-imposed limitation, which complainants are not at liberty to question or disregard. Westinghouse v. Power-Brake Co., 170 U. S. 537–558, 18 Sup. Ct. 707, 42 L. Ed. 1136. In fact, it appears to me conclusively from the proof in this case that, if the complainants' invention is not so limited, it was anticipated by several of the references made by the patent office, as disclosed by the file wrapper.

It results that, conceding to the complainants the full benefit of their invention, as found in claims 5, 6, and 8, and conceding the validity of the claims, notwithstanding the strenuous attack upon their patentability made by the defendant's counsel, the defendant is not shown to have infringed either one of them.

The next patent for consideration is No. 430,755, granted to H. B. Robischung, of date June 24, 1890. Its second claim only is alleged to be infringed by the defendant. It is as follows: "A clamp or yoke having flanges provided at or near their extremities with inwardly projecting lugs, which limit the closing of the flanges, substantially as and for the purposes specified." This claim relates to a yoke clasped around a brake beam, with extended flanges, through which a bolt is inserted upon which to hang the safety chain. In actual use, the operating nut at the end of the bolt is screwed up, and has a tendency to cause the flanges to bind or rigidly hold the safety chain, and to cause the chain itself, when so rigidly held and subject to the jolts and jars of service, to loosen up the bolt. The object to be accomplished was to so regulate and control the tightening of the bolt as to always permit the chain to hang freely over it, unbound by the flanges of the clip. To accomplish this object, lugs are provided, one on each of the inner sides of the flanges, at their ends below the bolt, so that, in the process of tightening up the bolt, the lugs, being first brought into contact, interpose effective limits to prevent the flanges from impinging upon or binding the chain. This is all plainly disclosed by an inspection of Fig. 5 of the drawings of the patent, as follows:

The figure "3" here represents the lugs, and the figure "5" represents the bolt passing through the flanges.

There is no pretense that the yoke, flanges, or bolt of this claim are new, or that the purpose served by them is new. The invention of the claim consists simply in the intervention of these lugs at the end of the clip, to limit the effect of tightening the bolt, and thus always keeping the flanges sufficiently apart to prevent their squeezing the chain hung over the bolt. The question is whether this expedient rises to the dignity of "invention," as the term is employed in the patent law. I do not believe that every little expedient resorted to, not in an abstruse art or pioneer invention, but in ordinary physics, for the purpose of more effectually applying the well-known laws of force, should be easily monopolized. Without any consideration of the prior art, it seems to me that the employment of the lugs of this patent for the purpose stated was a suggestion of common experience, and so obvious and appropriate to prevent the squeezing of the safety chain as to be naturally and rationally seized upon by a skilled mechanic at all familiar with the requirements of railroad service. If so, it did not involve invention. Hollister v. Manufacturing Co., 113 U. S. 72, 5 Sup. Ct. 717, 28 L. Ed. 901. Given the necessity of holding the

flanges apart, so as not to squeeze the chain, and at the same time keep the rod over which the chain hangs reasonably tight; can anything be more obvious than to interpose some solid substance, like lugs, to prevent too much impingement? I think not. But, when the prior art is considered, we are not left to the sole resort of obviousness. The lugs of this patent are shown in the cant-hook clip in evidence, and the mechanical equivalent of the lugs is, in my opinion, found in the Preston patent, No. 369,383, and the first Hein patent, No. 361,009. In these patents the flanges of the clip are prevented from approaching too closely together by the interposition of the tension rod, located so as to pass between the flanges of the clip. In my opinion, claim 2 of this patent is void for want of patentable invention and novelty.

The next and last patent requiring consideration in this case is No. 466,984, granted to H. B. Robischung, of date January 12, 1892. The first and second claims only are alleged to be infringed. They are as follows:

"(1) In a cambered trussed brake beam, the combination, with the compression member and the strut or post, of an interposed key or wedge, substantially as and for the purposes specified.

"(2) In a cambered trussed brake beam, the combination, with the compression member, of a strut or post having a collar for the compression member, said collar provided with key slots and a key or wedge, substantially as and for the purposes specified."

The first claim, it is noticed, relates exclusively to the key or wedge. The second claim relates to the same key or wedge, and also a slot in the collar of the strut for the insertion of the key. The invention of these claims may therefore be considered together. It consists in providing a slot for the insertion of a wedge in the collar of the strut which clasps the beam, for the purpose of taking up the slack between the collar of the strut and the beam, and for the purpose of overcoming lost motion. The complainants' device involving these claims is readily seen in the following cut, Fig. 3 of the patent:

The circular or bent key, a', b', represent both the slot and the key called for by the two claims in question.

By reference to the above drawing, it is observed that the key of the claim is of a peculiar circular or bent shape, and follows a tortuous channel or slot made for it transversely across the beam. In other words, this device presents a peculiar and unusual con-

struction. The defendant's device shows a straight wedge, interposed longitudinally on the concave side of the beam, and between it and the convex end of the strut. This appears to me to be nothing but the common, old-fashioned process of tightening up the parts by a straight wedge or key driven in between the parts liable to be loosened. The prior art, as fully disclosed in the evidence, as well as common knowledge and common observation, as it seems to me, demonstrate that the key of the defendant's device, as well as the function intended to be discharged by it, are old. The claims in question, therefore, must, if their validity or patentability be sustained, be limited to the particular and peculiar construction shown in the drawings. It follows that, conceding novelty and patentability to the peculiar slot and key of complainants' device, the defendant does not infringe it. Under the rule hereinbefore referred to, that whatever would infringe if later would anticipate if earlier, any construction of the claims of the patent under consideration which would make the device of the defendant an infringement would render the claims invalid for want of novelty.

I have carefully considered the argument of complainants' counsel based on evidence of extensive sales of their brake beam. Whether such sales have been made as a result of construction under any of the patents involved in this case, or whether they have been the result of the "patent of completion," as the Robischung patent, No. 486,218, which is the subject of another suit, is called by them, or of other causes, I cannot say; but conceding to complainants' brake beam, as a whole, the merit of great success and popular favor, it does not follow that it is patentable as a new invention. Extensive use is strong proof of utility, but not of invention. In doubtful cases, extensive use and popular favor might, and properly should, turn the scales to the side of invention; but I am of opinion that the issue as to patentable invention in certain claims, found adversely to complainants, was not left in such doubt as to be properly affected by the extensive use of the completed product.

This concludes a consideration of all the claims of the several patents sued on in this case. The result is, as already shown in detail, that, in so far as any of the claims are valid, the same are not infringed by the defendant, and the bill must accordingly be dismissed.